IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THERA LAMBERT and AMY CONNOR,
Individually and on Behalf of
All Others Similarly
Situated,

               Plaintiffs,

      v.

DOLLAR GENERAL CORPORATION,

               Defendant.

Case No. 16 C 11319

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Dollar General Corporation's Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim [ECF No. 45]. For the reasons stated herein, the Court grants Defendant's Motion in part. Counts II and III are dismissed without prejudice.

## I. BACKGROUND

The following facts derive from Plaintiffs' Amended Complaint and are, for purposes of this motion, accepted as true, with all inferences drawn in their favor. *See, e.g., Adams v. City of Indianapolis,* 742 F.3d 720, 728 (7th Cir. 2015).

Defendant Dollar General Corporation ("Dollar General") manufactures and sells DG Body Soothing Aloe Gel (the "Gel" or

"Aloe Gel"), a cosmetic product allegedly marketed to cool and moisturize the skin. (ECF No. 30 ("Am. Compl.") ¶¶ 2, 30.) The front packaging of the Gel displays an aloe leaf and, in two bullet points, states that it both "cools" and "moisturizes." According to packaging on the back, the Gel "lets you quickly soak your skin in after-sun cooling relief" and is "made with Aloe Vera, which cools and moisturizes the skin." Listed as the fifth ingredient is "aloe barbadensis leaf extract." (Am. Compl. ¶¶ 19-20.) Aloe barbadensis is the scientific name for one species of the aloe vera plant. (*Id.* ¶ 13.)

Plaintiffs Thera Lambert and Amy Connor ("Plaintiffs"), both Illinois residents, allege that they purchased the Gel at brick-and-mortar Dollar General stores "[d]uring 2015 and 2016" and "in June or July of 2016," respectively. (Am. Compl. ¶¶ 7-8.) Both did so after reading the product's label and believing that it contained aloe vera, which they valued for its commonly understood skin healing and sunburn-relief qualities. (*Ibid.*) Plaintiffs, through counsel, submitted the Gel for testing. The results indicate an absence of acemannan, glucose, malic acid, and whole leaf markers, which Plaintiffs allege are key chemical hallmarks of aloe vera according to the American Herbal Pharmacopeia (the "AHP") and the International Aloe Science Council (the "IASC"). (*Id.* ¶¶ 20-21.)

Based on the test results, Plaintiffs claim that Dollar General's marketing of the Gel as "Aloe Gel" containing "aloe barbadensis leaf extract" and "made with aloe vera" (hereinafter also referred to as "the challenged statements") is thus false, deceptive, and misleading cosmetic labeling under the Food Drug and Cosmetic Act, 21 U.S.C. § 362, and its implementing regulations, 21 C.F.R. § 701. (Am. Compl. ¶¶ 31-34.) Plaintiffs maintain that they would not have purchased the Gel but for the challenged statements. (*Id.* ¶¶ 23-24.)

Two weeks after sending a pre-suit demand notice to Dollar General (Am. Compl. ¶¶ 55, 65), Plaintiffs filed their initial Complaint. (ECF No. 1 ("Compl.").) Their Amended Complaint now recites counts for breach of express warranty, breach of the implied warranty of merchantability, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"). Plaintiffs seek redress for themselves and a class of similarly situated individuals defined to include "[a]ll persons in the State of Illinois who, within four (4) years of the filing of this Complaint, purchased the Product from Dollar General or dollargeneral.com for personal use and not for resale." (Am. Compl. ¶ 37.) Dollar General now moves to dismiss all counts of the Amended Complaint, arguing that Plaintiffs fail to state claims on which relief can be granted.

## II. **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must state a claim that is plausible on its face." *Adams,* 742 F.3d at 728 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim enjoys "facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Adams,* 742 F.3d at 728 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). A plaintiff must allege that all elements of his claim are satisfied, but cannot survive a Rule 12(b)(6) motion to dismiss by alleging only legal conclusions. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1147 (7th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

## III. **ANALYSIS**

### A. **Count I: Breach of Express Warranty**

An express warranty arises where (1) the seller makes an affirmation of fact or promise (2) that relates to the goods and (3) becomes part of the basis of the bargain between the parties. *See, Royal Bus. Mach., Inc. v. Lorraine Corp.,* 633 F.2d 34, 41 (7th Cir. 1980). The decisive test for whether "a given representation is a warranty . . . is whether the seller

asserts a fact of which the buyer is ignorant or merely states an opinion or judgment on a matter which the seller has no special knowledge and on which the buyer may be expected also to have an opinion and to exercise his judgment." *Id.* at 41. In the first case there is a warranty, but in the second there is not. *Weiss v. Rockwell Mfg. Co.,* 293 N.E.2d 375, 381 (Ill. App. 1973).

To state a claim for breach of an express warranty under Illinois law, the complaint must allege (1) the terms of the warranty; (2) a breach or failure of the warranty; (3) a demand upon the defendant to perform under the terms of the warranty; (4) a failure by the defendant to do so; (5) compliance with the terms of the warranty by the plaintiff; and (6) damages measured by the terms of the warranty. *See, e.g., Ibarrola v. Kind LLC,* No. 13 C 50377, 2015 WL 1188498, at *5 (N.D. Ill. Mar. 12, 2015) (citing *Hasek v. DaimlerChrysler Corp.,* 745 N.E.2d 627, 638 (Ill. App. 2001)).

The Court finds, and Dollar General does not contest, that the challenged statements give rise to an express warranty. Plaintiffs aver that, upon purchasing the Gel, they entered into a contract with Dollar General the terms of which included the promises and affirmations of fact on the Gel's packaging. (Am. Compl. ¶ 49.) The challenged statements - that Aloe Gel

- 5 -

contains "aloe barbadensis leaf extract" and is "made with aloe vera" – are affirmations of fact relating to the Gel of which the buyer is ignorant. Plaintiffs also adequately allege that this affirmation became part of the basis of the bargain between themselves and Dollar General. As such, Plaintiffs' Amended Complaint sufficiently pleads an express warranty and its terms. Similarly, the Court finds, and Dollar General does not dispute, that Plaintiffs satisfied the pleading requirements of alleging a demand upon the defendant (*i.e.,* Plaintiffs' November 30, 2016 notice and demand), their own compliance with the warranty's terms (*i.e.,* by purchasing the Gel), and damages measured by the terms of the warranty (*i.e.,* the retail price paid for a gel conforming to the challenged statements).

Dollar General's chief bone of contention, then, is that Plaintiffs have not plausibly alleged the second pleading requirement, a breach or failure of the warranty (which in turn implicates the remaining pleading requirement concerning Dollar General's failure to perform in response to Plaintiffs' demand). Dollar General urges that Plaintiffs have failed to plead adequately the falsity of the challenged statements, as their only cited authority linking the chemical hallmarks absent from the Gel with aloe vera derives from publications issued by voluntary (rather than authoritative or legally binding)

industry groups. The IASC, Dollar General contends, is a certifier that promulgates standards for high-quality aloe vera products, such that the Amended Complaint takes flawed recourse to IASC literature requiring the asserted chemical hallmarks of aloe vera that were absent from the Gel. Relatedly, Dollar General argues that the AHP is an organization whose pronouncements do not bind Dollar General and that, in any event, the referenced monograph did not study finished products containing processed aloe vera, only raw materials in the form of whole "raw aloe leaf and two juices that can be expressed from it." (ECF No. 46 ("Def.'s Mem.") at 5.) Because Dollar General does not represent that the Gel is certified by either organization or claim to meet the monograph standards for raw aloe leaf and juices, it maintains that Plaintiffs have not plausibly alleged the falsity of the challenged statements, and thus that the express warranty failed them.

The Court initially rejects the notion that the plausibility of Plaintiffs' allegations turns on whether the IASC and AHP promulgate binding standards regarding manufacture of aloe products. That these industry groups commissioned the cited third-party studies has no bearing on the plausibility of Plaintiffs' allegations of falsity. Dollar General offers no authority for disregarding allegations of falsity premised on

information from industry group publications, and there is case law suggesting the opposite. *See, e.g., Castrol Inc. v. Pennzoil Co.,* 987 F.2d 939, 945 (3d Cir. 1993) (recognizing that even a test which is not an industry standard may yield accurate results that bear on literal falsity in the false advertising context, so long as the test correctly measures the product at issue), *cited with approval, BASF Corp. v. Old World Trading Co., Inc.,* 41 F.3d 1081, 1089 (7th Cir. 1994). Worth emphasizing is that Plaintiffs do not invoke the IASC or AHP studies as legal authority but instead to interpret test results further to bringing their state-law claims.

Next, Dollar General cites *Spector v. Modelēz Int'l, Inc.,* 178 F.Supp.3d 657 (N.D. Ill. 2016), for the proposition that the IASC and AHP standards for high-quality aloe products and raw aloe leaf do not speak to the "different question" of whether the Gel contains aloe barbadensis leaf extract. In *Spector,* the plaintiff sued a manufacturer of breakfast biscuits asserting, *inter alia,* breach of express warranty and violation of the ICFA based on the manufacturer's statement that its products provide "at least four hours all morning of 'nutritious steady energy.'" *Id.* at 663. Spector alleged that the products provide four hours of energy only when combined with a serving of low-fat milk. *Ibid.* The court granted the defendant's motion to dismiss

because the plaintiff "pleaded *no* facts, such as personal experience or third-party studies, showing that the Products do *not* provide 'nutritious steady energy' as promised." *Id.* at 665 (emphasis added). The complaint's plausibility was not enhanced by linking to a video, posted on one of the defendant's websites, summarizing several studies showing that the biscuits "provide four hours of continuous carbohydrate release when they are consumed with a glass of low-fat milk." *Id.* at 670. Rather than establishing that "one *must* consume the Products with low-fat milk in order to achieve four hours of energy," these statements "do no more than refer to the fact that milk was consumed with the Products in the cited studies." *Ibid.*

*Spector,* however, does not avail Dollar General because Plaintiffs are not committing "the classic error of inferring a causal connection from a scientific study which merely references the variable in the study without purporting to report any conclusions regarding the cause and effect relationship between the variables and the studies' results." *Spector,* 178 F.Supp.3d at 670. Rather, Plaintiffs use the AHP monograph – which, for example, lists the "[t]ypical constituent profile of aloe vera leaf juice" as containing more than five percent acetylated mannan, glucose, and malic acid content by weight – to allege that testing showing the lack of these

constituents in Aloe Gel establishes the falsity of the challenged statements. (Def.'s Mem. at Ex. B, 29 (Tbl. 2).) Indeed, the AHP monograph makes further pronouncements that might support application of its conclusions to the Gel. For example, it states: "*Cosmetic Product*: Aloe vera leaf and inner leaf juice is included in many aloe vera skin care products." (*Id.* at 27.)

Relatedly, that the AHP monograph was "developed to establish guidelines for determining the identity, purity, and quality of the crude leaves of *Aloe vera,* as well as aloe vera leaf juice (made from entire leaf) and aloe vera inner leaf juice (made from the colorless inner parenchyma) raw materials and products" (Def.'s Mem. at Ex B, 2), does not mean that the Court can determine on Dollar General's Motion – while drawing all inferences in Plaintiffs' favor – that it has no plausible application to finished goods purporting to be made with aloe vera and contain aloe barbadensis leaf extract. Whether manufacturing a product with aloe vera or incorporating aloe barbadensis leaf extract into it necessitates the chemical markers of whole aloe vera leaf or aloe vera leaf juice – such that reading the test results in light of the AHP's conclusions indicates falsity – is a matter beyond this Court's competence to evaluate absent a fully developed factual record. At this

preliminary stage, it suffices to note that the link between the study's conclusions and the Gel's affirmative statements of fact is plausible. Objections such as Dollar General's go to weight, not the plausibility of Plaintiffs' allegations, and are thus better evaluated after discovery.

The Court draws the reasonable inference in Plaintiffs' favor that the IASC and AHP studies sufficiently implicate the Gel's claimed aloe barbadensis leaf extract. As such, the Court heeds the authority counseling against dismissing allegations of false statements regarding a finished product that are grounded in studies of one of its active ingredients. *See, e.g.,* *Conrad v. Nutramax Labs., Inc.,* No. 13 C 3780, 2013 WL 5288152, at *3-4 (N.D. Ill. Sept. 18, 2013) ("Nutramax attacks this finding on the ground that the study only addresses glucosamine; however, glucosamine is a primary active ingredient of [the accused product], and the impact of other ingredients is a question that requires further exploration not suited for this stage of the pleadings. . . . Whether or not these studies apply to [the accused product] is a question of fact that this Court cannot now decide."); *Pearson v. Target Corp.,* No. 11 C 7972, 2012 WL 7761986, at *2 (N.D. Ill. Nov. 9, 2012) ("The fact that these studies looked at products that shared the same active

ingredients – Glucosamine, Chondroitin, and MSM – makes Plaintiff's claim facially plausible.").

Therefore, Plaintiffs adequately plead that the express warranty on the Gel's packaging failed them because its affirmative statements on which they relied were not true. As such, Plaintiffs state a cognizable claim under Illinois law for breach of express warranty.

### B. Count II: Breach of Implied Warranty of Merchantability

A warranty that goods "shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 Ill. Comp. Stat. 5/2-314. To state a claim for breach of the implied warranty of merchantability under Illinois law, a plaintiff must allege that (1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect. 810 Ill. Comp. Stat. 5/2-314. To be merchantable, "the goods must be, among other things, fit for the ordinary purpose for which the goods are used." 810 Ill. Comp. Stat. 5/2-314.

Dollar General does not dispute that an implied warranty of merchantability inheres in sales of the Gel, that Plaintiffs

have adequately alleged damages, or that Plaintiffs gave notice of the Gel's alleged defect. Rather, Dollar General argues that Plaintiffs fail to plead adequately that the Gel flunked its ordinary purpose. *See, e.g., Industrial Hard Chrome, Ltd. v. Hetran, Inc.,* 64 F.Supp.2d 741, 748 (N.D. Ill. 1999) (holding that a plaintiff suing for breach of the implied warranty of merchantability must allege what the product's ordinary purpose was and how it was unfit for that purpose when it left the seller's control). Because this argument really implicates two distinct possible shortcomings of the operative complaint, the Court analyzes it in two parts.

The closest Plaintiffs come to alleging the "ordinary purpose" of the Gel is when they claim that "'[a]fter-sun' aloe products like Defendant's Product are marketed and sold for burn and sunburn relief and similar conditions requiring the healing properties of aloe." (*Id.* ¶ 62.) Although this allegation of purpose may not be specific to the Gel (as opposed to a class of similar products), the Court finds that, in tandem with the statements on the Gel's packaging that it "cools" and can be used for "after-sun cooling relief," Plaintiffs sufficiently identify an ordinary purpose of the Gel as cooling skin after sun exposure.

The problem, however, lies in the lack of allegations concerning how the Gel *failed* this purpose or, in other words, *was defective or otherwise not merchantable* at the time of sale. *See, e.g., Corwin v. Connecticut Valley Arms, Inc.,* 74 F.Supp.3d 883, 891 (N.D. Ill. 2014) (granting motion to dismiss breach of implied warranty claim based on failure to "provide facts that detail how the bullet was defective" as to its "ordinary and intended uses"). Plaintiffs make only two allegations directed to how the Gel was unfit for its ordinary purpose. First, Plaintiffs aver that the Gel "was not merchantable at the time of sale, because it did not conform – nor could it have conformed – to Defendant's representations as alleged herein. Specifically, Defendant's Product does not contain aloe vera, aloe gel, or Aloe Barbadensis leaf extract as claimed." (Am. Compl. ¶ 60.) Second, Plaintiffs make the conclusory statement that, "[b]ecause Defendant's Product does not contain Aloe Vera, it is unfit for these ordinary purposes." (*Id.* ¶ 62.) Plaintiffs fatally neglect to plead that the Gel failed to cool (or moisturize) their skin; this is no surprise, because neither Plaintiff alleges actual use of the Gel.

Such a lacuna evokes *Baldwin v. Star Scientific, Inc.,* 78 F.Supp.3d 724 (N.D. Ill. 2015), where the court dismissed a claim for breach of the implied warranty of merchantability

- 14 -

because the plaintiff did "not allege in what way the product was ineffective" in performing its ordinary purpose. *Id.* at 741. What is more, unlike the situation here, the plaintiff in *Baldwin* at least alleged that the product "did not work" and did not provide the claimed "health benefits." *Ibid.* Plaintiffs in this case hang their hat on the Gel's alleged lack of aloe vera not conforming to Dollar General's representations. But that is no more and no less than their express warranty theory. And nothing in the Amended Complaint supports the inference that *only* aloe vera can moisturize or cool skin – such that the very allegation of its absence from the Gel plausibly states a failure of ordinary purpose.

Therefore, there is no plausible claim that the Gel failed its ordinary and intended purpose. The Court grants Defendant's Motion as to Count II.

### C. Count III: Violation of the ICFA

To state an ICFA claim, a private-party plaintiff must allege (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce; and (4) that the plaintiff suffered actual damages proximately caused by the deception. *See, Oliveira v.*

*Amoco Oil Co.,* 776 N.E.2d 151, 160 (Ill. 2002); *accord, Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 574 (7th Cir. 2012) (quoting *Siegel v. Shell Oil Co.,* 612 F.3d 932, 934 (7th Cir. 2010)); *Camasta v. Jos. A Bank Clothiers, Inc.,* 761 F.3d 732, 739 (7th Cir. 2012). In addition, the heightened pleading requirements of Rule 9(b) apply to ICFA claims. *Pirelli Armstrong Retiree Med. Corp. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 441 (7th Cir. 2011).

Dollar General does not dispute that Plaintiffs allege sufficient facts to satisfy the reliance, trade-or-commerce, and actual damages ICFA pleading requirements. Nor does Dollar General challenge on Rule 9(b) grounds the specificity with which Plaintiffs plead the circumstances of fraud. Instead, Dollar General's arguments for dismissal of the ICFA claim are twofold. First, it contends that Plaintiffs' consumer fraud claim is barred based on the ICFA's safe harbor for compliance with federal law. Second, Dollar General maintains that Plaintiffs' ICFA claim duplicates their express warranty claim, such that the former is not cognizable. The Court rejects the first of these arguments but agrees with the second.

The ICFA does "not impose higher disclosure requirements on parties than those that are sufficient to satisfy federal regulations." *Bober v. Glaxo Wellcome PLC,* 246 F.3d 934, 941

(7th Cir. 2001). Under the FDA's scheme for regulating cosmetics, if any ingredient (other than the eight described in 21 C.F.R. § 701.30) is given a name by the Personal Care Products Council (the "PCPC"), that particular name must be used in the ingredient list. 21 C.F.R. § 701.3(c)(2)(i). Because the PCPC has said that the ingredient Dollar General uses in the Gel must be referred to as "aloe barbadensis leaf extract," Dollar General claims that it does not have discretion to take out the word and that the ICFA's safe harbor provision immunizes it from liability for this representation on the Gel's packaging.

This argument seems to miss the point. The federal framework only requires the use of the term "aloe barbadensis leaf extract" if indeed the product at issue contains such an ingredient. Plaintiffs allege that it does not, and so they adequately plead around the safe harbor exemption (to the extent they are required to do so in the first place, given that courts generally regard the ICFA safe harbor as an affirmative defense. *See, e.g., Keith v. Ferring Pharms., Inc.,* No. 15 C 10381, 2016 WL 5391224, at *11 (N.D. Ill. Sept. 27, 2016).). Similar to the situation in *Nichols v. Naturmed, Inc.,* No. 16 C 7356, 2017 WL 1333146 (N.D. Ill. Apr. 11, 2017), Plaintiffs claim that a representation on the label is not truthful because the product

- 17 -

lacks the ingredient at issue, and on that basis does not comply with FDA regulations. *Id.* at *3. Plaintiffs' ICFA claim is therefore not implausible on the basis of the statute's safe harbor provision.

However, the Court agrees that Plaintiffs' ICFA claim is merely its breach of express warranty claim clothed in different garb. It is settled that the ICFA "should not apply to simple breach of contract claims." *Am. Airlines, Inc. v. Wolens,* 513 U.S. 219, 233 (1995) (quoting *Golembiewski v. Hallberg Ins. Agency, Inc.,* 635 N.E.2d 452, 460 (Ill. App. 1994)). Other than Plaintiffs' addition of boilerplate language concerning Dollar General's "malice, motive, and a reckless disregard of the truth" (Am. Compl. ¶¶ 73, 78), there is no "allegation of misrepresentation that Plaintiffs allege in Count III that they do not also identify as an express warranty in Count I." *Reid v. Unilever U.S., Inc.,* 964 F.Supp.2d 893, 913-14 (N.D. Ill. 2013); *see, Sklodowski v. Countrywide Home Loans, Inc.,* 832 N.E.2d 189, 196-97 (Ill. App. 2005) (characterizing the same facts underlying the plaintiff's contract claim with the added words "deceptive" and "unfair" did not make the claim actionable under the ICFA). By crying consumer fraud based only on the same affirmative statements that backstop their breach-of-express-warranty claim, Plaintiffs fail to bring an actionable

ICFA claim. *See, e.g., Shaw v. Hyatt Int'l Corp.,* 461 F.3d 899, 902 (7th Cir. 2006) (reasoning that customer's ICFA claim relied "exclusively on the express promises made by the Hyatt website, which he accepted by booking on its site, and therefore is based entirely on that breach of contract"); *Duffy v. Ticketreserve, Inc.,* 722 F.Supp.2d 977, 992 (N.D. Ill. 2010) (dismissing ICFA claim because "[w]hat Plaintiffs call consumer fraud is really an allegation that the Defendant failed to properly fulfill its contractual obligations"); *cf. Pappas v. Pella Corp.,* 844 N.E.2d 995, 999 (Ill. App. 2006) (allowing an ICFA claim to proceed because there was "no evidence that the claims in plaintiffs' Third Amended Complaint are based on a simple breach of warranty"). Moreover, Plaintiffs have not alleged facts sufficient to support characterizing this case as one involving ICFA consumer protection concerns, such as "sharp practices designed to mislead consumers about a competitor" or "public health, safety, or welfare issues." *Simon v. Oltmann,* No. 98 C 1759, 2001 WL 1035719, at *8 (N.D. Ill. Aug. 31, 2001) (Leinenweber, J.) (citations omitted).

Therefore, the Court grants Defendant's Motion in relevant part and dismisses Plaintiffs' ICFA claim as duplicative of their claim for breach of express warranty.

### D. Carbomer

In one paragraph of the Amended Complaint's facts section, Plaintiffs allege that Dollar General violates 21 C.F.R. § 701 by merely listing "carbomer" as the sixth ingredient in the Gel without specifying the particular type of carbomer. (Am. Compl. ¶ 35.) There is no other mention of carbomers, and Plaintiffs do not allege what carbomers are or that they have any bearing on aloe vera content. None of Plaintiffs' counts allege that carbomer labeling formed part of the basis of Plaintiffs' bargain, that the Gel was not merchantable because of the way in which it listed carbomer as an ingredient, or that Plaintiffs relied or the reasonable consumer relies on a more specific carbomer designation. To the extent Plaintiffs plausibly allege that the Gel's carbomer labeling did not comply with FDA regulations – something the Court takes no position on at this time – neither their warranty nor ICFA claims have anything to do with such non-compliance. As a result, the Court finds the carbomer allegations irrelevant to the balance of the Amended Complaint.

### E. Without Prejudice

Dollar General urges dismissal with prejudice, reminding the Court that Plaintiffs took the opportunity to read Dollar General's motion to dismiss their original complaint before

filing the Amended Complaint. Citing *Pugh v. Tribune Co.,* 521 F.3d 686 (7th Cir. 2008), Dollar General argues that, because it pointed out deficiencies before Plaintiffs amended, they are not "entitled to wait and see what the district court said before making any changes to the complaint." *Id.* at 698.

However, unlike in *Pugh,* Plaintiffs have only amended once. Moreover, this opinion marks the Court's first evaluation of Plaintiffs' allegations. Rather than issue dismissals with prejudice, the Court feels that the more prudent alternative is futility testing any amendments Plaintiffs may propose against the legal framework and analysis set forth in this opinion. As such, Counts II and III are dismissed without prejudice.

## IV.  CONCLUSION

For the reasons stated herein, the Court grants in part Defendant Dollar General's Motion to Dismiss the Amended Complaint [ECF No. 45]. Counts II and III are dismissed without prejudice.

**IT IS SO ORDERED.**

_____
     Harry D. Leinenweber, Judge
     United States District Court

Dated: June 16, 2017